IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 20-00024-01 DKW |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN SUPPORT OF |
| | ) | MOTION TO DETAIN DEFENDANT |
| vs. | ) | ARTHUR BRUN |
| | ) | |
| ARTHUR BRUN,            (01) | ) | |
| aka "Ata," | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF
MOTION TO DETAIN DEFENDANT ARTHUR BRUN**

The United States of America respectfully submits this memorandum in support of its motion to detain Defendant ARTHUR BRUN, aka "Ata," pending trial. As alleged in the Indictment, and as the government proffers for purposes of a detention hearing, BRUN:

- led a months-long, multi-defendant drug trafficking conspiracy that obtained substantial amounts of controlled substances from a leading member of a gang;

- made arrangements to supply a firearm and "thousands" of rounds of ammunition to his "gun man," who he knew was a convicted felon, at a time when BRUN himself is a convicted felon;

- had drug traffickers working under him who had ready access to firearms;

- himself attempted to import drugs into the State of Hawaii from the continental United States;

- assaulted and caused bodily injury to a law enforcement officer with his vehicle in an effort to avoid being apprehended with a pound of his drugs;

- at times requested sexual favors as repayment for drugs he supplied;

- tampered with a witness and attempted to tamper with evidence in an effort to avoid justice for his crimes; and

- took numerous steps to track the movement of police patrol vehicles while he was engaged in his illegal drug business.

This conduct shows a clear and convincing danger to the community. Indeed, under the Bail Reform Act, each of the drug charges against BRUN, standing alone, is *presumed* to present a danger to the community, and there is no evidence sufficient to overcome that presumption here.

BRUN is a sitting member of the Kaua'i County Council and, at a detention hearing, he may argue that his position as an elected official should weigh in favor of pretrial release. But the fact that the Indictment charges BRUN with committing these crimes while he held a position of public trust makes detention, if anything, more appropriate here. A defendant who has had the privilege of holding a position of public trust should not have a privileged position to argue for pretrial release after he has violated that trust.

For these and other reasons, all of which are set forth more fully below, the government respectfully submits that BRUN should be detained pending trial.

I.      **Procedural and Factual Background**

On February 13, 2020, a grand jury returned a sealed thirteen-count indictment (the "Indictment") charging BRUN and eleven other defendants for their participation in a drug trafficking organization. BRUN is charged in six separate drug-related counts with:

- conspiring from at least June 2019 and continuing to in or about January 2020, to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count 1);

- distributing a mixture and substance containing a detectable amount of methamphetamine on September 17, 2019, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 2);

- attempting to possess 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine between October 22, 2019, and October 25, 2019, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 3);

- possession of 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine on October 29, 2019, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 4);

- distributing a mixture and substance containing a detectable amount of methamphetamine on November 19, 2019, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 7); and

- distributing a mixture and substance containing a detectable amount of methamphetamine on November 21, 2019, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 8).

In addition to the drug-related charges, the Indictment charges BRUN with assault of a federal law enforcement officer (Count 5), evidence tampering (Count

6), witness tampering (Count 9), and conspiring to possess a firearm and ammunition as a convicted felon (Count 13).

The evidence is strong. In brief, it includes (i) court-authorized Title III wiretap interceptions of wire and electronic communications on two of BRUN's cellphones, which captured pertinent communications between BRUN and every defendant in the Indictment; (ii) forensic extractions of multiple cellular telephones, including one of BRUN's cellphones; (iii) audio and video recordings from controlled purchases of drugs, including a controlled purchase from BRUN; (iv) the results of search warrants at physical locations, including drugs, firearms, and ammunition; (v) the results of search warrants on social media accounts, including one of BRUN's accounts; and (vi) physical surveillance that law enforcement conducted in coordination with the Title III wiretap interceptions and during controlled purchases of drugs, among other things.

On February 27, 2020, Arthur Brun, aka "Ata," Maluelue Umu, aka "Malu," Kelvin Kauwila Kai, aka "Kauwila," Steven Keliikuli, Kaniu Huihui, Sheena Millare, Efren Yanos, Kirsten Makanoe Ayau, aka "Makanoe," Orlando Manguchei, aka "Ole," Robby Silva, Haidee Sueyasu and Phrystal Bacio was arrested and the Indictment was unsealed.

//

//

## II. Applicable Law

Under the Bail Reform Act, a court must detain a defendant pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

When, as here, a defendant is charged in a drug case in which the maximum sentence is ten years or more, there is a rebuttable presumption that there are no condition or combination of conditions that will reasonably assure the safety of any other person and the community. *See* 18 U.S.C. § 3142(e)(3)(A).

The defendant bears the burden of producing evidence to rebut that presumption. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant satisfies that burden of production, the presumption does not vanish; instead, it "'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).'" *Id.* (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). The government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community, *see* 18 U.S.C. § 3142(f)(2)(B), and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight, *see United States v. Aitken*,

898 F.2d 104, 107 (9th Cir. 1990) (citing *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985)).

Section 3142(g) lists the following factors that a court must consider in determining whether detention is required:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . a controlled substance [or] firearm . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)-(4).

## III. Discussion

BRUN is charged with multiple drug-related offenses that each, standing alone, warrants a rebuttable presumption under Section 3142(e)(3)(A) that there is no condition or combination of conditions that will reasonably assure the

appearance of the defendant and the safety of the community. Moreover, the factors in 18 U.S.C. § 3142(g) weigh heavily in favor of detention on the grounds of dangerousness.

### A. BRUN's Detention Is Presumptively Necessary

Section 3142(e)(3)(A)'s rebuttable presumption applies here because Counts 1, 2, 3, 4, 7, and 8 of the Indictment—the drug-related charges—each carry a statutory maximum of ten years or more. Indeed, the statutory maxima for these offenses are all well over ten years—life for Counts 1 and 4, 40 years for Count 3, and 20 years for Counts 2, 7, and 8. Counts 1 and 4, in fact, call for a mandatory *minimum* of ten years' imprisonment. The rebuttable presumption applies with great force here given the nature of the drug-related charges in the Indictment.

The government submits that the presumption that BRUN is dangerous cannot be overcome. While it is conceivable that a combination of conditions could address the presumption that BRUN is a risk of flight, those conditions would not warrant BRUN's pretrial release, given the danger to the community that he would pose if released.

### B. The Section 3142(g) Factors Weigh in Favor of BRUN's Detention

The factors set forth in Section 3142(g) weigh strongly in favor of BRUN's pretrial detention on the grounds of dangerousness.

//

1. **The Nature and Circumstances of BRUN's Offenses Weigh Strongly in Favor of Detention**

    a. **The Drug Charges Weigh In Favor of Detention**

The drug charges in the Indictment relate to BRUN's role in operating a months-long, multi-defendant drug trafficking organization that pumped dangerous drugs into the community on Kaua'i. The nature of these offenses weighs strongly in favor of detention. As U.S. District Judge Alan C. Kay has observed, "the distribution of drugs is a serious offense," and, indeed, "it is for this reason that the [Bail Reform] Act imposes a rebuttable presumption of danger to the community for certain drug related offenses . . . ." *United States v. Christie*, Crim. No. 10-00384-SOM, 2010 WL 2900371, at *4 (D. Haw. July 20, 2010).

The circumstances of these drug charges also weigh strongly in favor of detention. As the Indictment alleges, and as evidence at trial will show, "BRUN led [the] drug trafficking organization . . . that distributed substantial amounts of methamphetamine on Kaua'i." Indictment ¶ 1. During this time, the KPD observed BRUN conducting extensive counter surveillance to obscure his movements from law enforcement. The wiretap interceptions further illustrated that BRUN and his co-conspirators actively coordinated to alert each other to the presence of police and potential undercover vehicles. BRUN's leadership role over this large drug trafficking organization is a circumstance that supports

detention. So too is BRUN's alleged criminal relationship with defendant MALUELUE UMU, aka "Malu," a "shot caller," or leader, of the United Samoan Organization (the "USO gang"), from whom BRUN is alleged to have obtained methamphetamine for the drug trafficking organization. *Id.* at ¶ 2.

A further aggravating circumstance is that the government expects the evidence at trial will show that BRUN sometimes requested sexual favors as repayment for drugs he supplied. This will be proved through, among other things, the expected testimony of a defendant who is proffering with the government in hopes of leniency at sentencing in a pending federal case. It will also be proved through phone calls intercepted through the Title III wiretap, which captured BRUN making suggestions to his female runners that they make themselves available for him sexually. (*See, e.g.*, Attachments 1-2 (linesheets of intercepted calls)).[1] This evidence is, in turn, consistent with information obtained from a member of BRUN's drug trafficking organization during the course of this investigation. Specifically, at some point within the past three months, a member of the drug trafficking organization approached the KPD and stated, in substance and in part, that she/he was doing drug-trafficking work for BRUN but that she/he wanted to break away because she/he had observed BRUN having an "orgy" with

9

females who appeared to be 18 to 19 years old. That a member of BRUN's drug trafficking organization was so appalled at what she/he observed that she/he was willing to report it to the KPD is an indication of seriousness of this behavior.

As alleged, and as the government proffers for purposes of a detention hearing, BRUN did not merely distribute methamphetamine in his community on Kaua'i. He also made efforts to import methamphetamine into the community from California. As alleged in the Indictment, in October 2019, BRUN arranged with HUIHUI to purchase approximately one pound of methamphetamine that would be mailed to Kaua'i from California for $9,000. The KPD intercepted the parcel of methamphetamine, pursuant to a search warrant, before it could be delivered to its addressee, "C. Huihui." *See* Indictment, ¶ 8.p. This conduct also weighs strongly in favor of detention.

### b. The Other Charges Weigh in Favor of Detention

During the course of BRUN's drug-related crimes, BRUN is also alleged to have assaulted a federal law enforcement officer, tampered with evidence, tampered with a witness, and conspired to supply a firearm and ammunition to a co-defendant ORLANDO MANGUCHEI, aka "Ole," a convicted felon. The stated purpose of this firearm was to allow MANGUCHEI to hunt while he was on

---

[1] These linesheets will not be publicly filed, but the government is delivering hard copies to the Court and will provide hard copies to defense counsel for their

Kauaʻi on federal supervised release.  These additional charges are serious and also weigh strongly in favor of detention.

The assault charge relates to an incident that occurred on October 29, 2019.  Through physical surveillance, the KPD observed BRUN meet with UMU to receive a pound of methamphetamine.  After the meeting, the KPD conducted a traffic stop for a tint violation on BRUN's vehicle.  Arrangements had been made for a canine to be near the area.  As planned, the KPD requested a canine sniff of BRUN's vehicle while a lieutenant with the KPD conducted his traffic violation investigation.  The canine alerted to the presence of a narcotic odor coming from the vehicle, at which point the lieutenant asked BRUN to exit the vehicle.  BRUN responded, in sum and substance, "you didn't stop me for the tint, this isn't right." As the lieutenant repeated orders for BRUN to place the vehicle in park and to turn off the engine, BRUN refused to comply with the commands.  Instead, BRUN placed the vehicle in drive and sped off, fleeing from the KPD while the lieutenant attempted to remove the keys from the ignition.  The lieutenant suffered injuries as a result of BRUN's abrupt decision to speed off while the lieutenant's arm and shoulder were partially inside of the vehicle.  *See* Indictment, ¶¶ 8.s-8.t.

Although the KPD briefly lost sight of BRUN's vehicle during the chase, BRUN ultimately was apprehended not far from the scene of the traffic stop.  At

---

inspection in advance of the detention hearing.

11

that point, investigators traced the route that BRUN's vehicle had taken and found, along that route, a Wal-Mart bag that had some of its contents strewn around the area in a manner indicating that it had been tossed. A closer look at the items outside the opened Wal-Mart bag revealed that it contained, among other things, a large Ziploc baggie containing numerous unused Ziploc type baggies, a Ziploc baggie containing used and unused Ziploc type baggies, a large Ziploc type bag containing a Blade brand digital weighing scale, more numerous smaller Ziploc type baggies, and a measuring spoon. Approximately 517.6 grams (or approximately one pound and two ounces) of methamphetamine were recovered. *See id.* at ¶ 8.t. After BRUN was released from custody he made several calls to others in his drug trafficking organization and discussed the circumstances surrounding the traffic stop and brazenly displayed his lack of respect for law enforcement or the injury that he caused. (*See, e.g.*, Attachments 3-4 (linesheets of intercepted calls)).

  That BRUN was willing to speed off from the scene of a traffic stop—injuring a member of the KPD and endangering other motorists—merely to avoid being apprehended with his drugs underscores BRUN's dangerousness to the community. And after BRUN was released from a brief stay in state custody, he called KAI to attempt to recover the pound of methamphetamine that he had thrown out of his window during the high-speed chase, in order to avoid its being

recovered by the KPD (which, unbeknownst to BRUN, it already had been). (*See, e.g.*, Attachments 5-7 (linesheets of intercepted calls)). These efforts gave rise to the evidence tampering charge against BRUN and KAI, which is a serious offense weighing in favor of detention.

BRUN also sought to obstruct justice by tampering with a witness. As alleged in the Indictment, in the late evening of November 21, 2019, BRUN supplied another person with approximately one ounce (28.3 grams) of methamphetamine, which the KPD seized during a traffic stop shortly thereafter. Early in the next morning, that person called BRUN, informed BRUN about the traffic stop, and expressed concern that, in substance and in part, all the "stuff is in the bag in my backpack . . . ." BRUN responded, in substance and in part, "Say you don't, you know what I don't know whose bag . . . and then just stay with that." After the other person suggested that he could also lie and say that the backpack belonged to someone "that left the island," BRUN initially said it was up to the other person, but then decided, "[t]hat's fine yea yea yea." BRUN's alleged coaching of a witness to lie to the police is serious conduct that weighs heavily in favor of detention. (*See, e.g.*, Attachment 8 (linesheet of intercepted call)).

The circumstances of the firearm charge against BRUN (Count 13) are also deeply concerning. As charged in the Indictment, BRUN conspired to make a firearm and ammunition available to Defendant ORLANDO MANGUCHEI, aka

13

"Ole," a convicted felon who acted to protect BRUN and the operations of the drug trafficking organization. *See* Indictment ¶ 3. Moreover, BRUN specifically sought to obtain an unregistered firearm for MANGUCHEI and remarked that MANGUCHEI would not be apprehended by the police. *See id.* at ¶ 22.a. (phone conversation on October 16, 2019). After MANGUCHEI offered to collect drug debts for BRUN, *see id.* at ¶ 22.b., BRUN followed up by confirming that he had a "SKS" firearm with "hundred or thousand rounds," and offered to get MANGUCHEI a "38 . . . revolver" if that was his preference. *Id.* at ¶ 22.c. In another intercepted call, BRUN referred to MANGUCHEI as his "gun man from before," a fitting description for an individual whom BRUN was working to equip with a gun and thousands of rounds of ammunition. (Attachments 9 and 10 (linesheet of intercepted call)).

      The bare fact that BRUN's charged conduct involved the use of a firearm is a circumstance weighing in favor of detention. *Accord* 18 U.S.C. § 3142(g)(1) (requiring consideration of "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a . . . firearm"). The fact that BRUN's firearm-related conduct involved making a firearm and ammunition available to a convicted felon—and BRUN's acknowledged "gun man"—is indeed serious. All the more serious is the fact that BRUN confirmed that he would make a firearm and thousands of rounds of ammunition available to MANGUCHEI one

day after MANGUCHEI had informed BRUN that he stood ready to collect debts on BRUN's behalf.  *See* Indictment, ¶ 22.b.

### 2. The Weight of the Evidence Counsels in Favor of Detention

Although the Ninth Circuit has described the weight of the evidence as the "least important" factor in considering a motion to detain, *United States v. Gebro*, 948 F.2d 1118, 1121 (1991), the weight of the evidence here does further support detention.  The evidence against BRUN includes two periods of Title III wiretap interceptions on two of his phones, during which BRUN had drug-related communications with each of his charged co-defendants.  It also includes physical surveillance that corroborated information obtained on the wiretap, as well as a controlled purchase from BRUN, a pound of methamphetamine recovered after BRUN threw it out of his vehicle during a high-speed chase, and another parcel of methamphetamine that BRUN arranged to import into the State of Hawaii from California and that the KPD intercepted before it was delivered to its addressee.  The evidence also includes two separate occasions where ounces of methamphetamine were seized from individuals shortly after BRUN distributed the drugs to them.  It includes an extraction from one of BRUN's cellphones from which drug-related communications were recovered.  And the government anticipates that multiple witnesses will testify about BRUN's drug trafficking activities at any trial.

The evidence against BRUN is strong, and this factor also counsels in favor of his detention pending trial.

### 3. BRUN's History and Characteristics Weigh in Favor of Detention

Although BRUN does have family and community ties, as well as financial resources, his history and characteristics on the whole weigh strongly in favor of detention.

First, in addition to distributing methamphetamine, BRUN also abused drugs himself. Drug abuse is a factor that weighs in favor of detention. *See* 18 U.S.C. § 3142(g)(3)(A).

Second, BRUN's criminal history weighs in favor of detention. His criminal history includes a 2004 misdemeanor conviction for abuse of family/household member, for which he was sentenced principally to two years' probation; a 2004 felony conviction for theft in the second degree, for which he was sentenced principally to ten days' confinement and five years' probation; a 2004 misdemeanor conviction for terroristic threatening in the second degree, for which he was sentenced to two days' confinement and a year of probation; and a 2004 misdemeanor conviction for abuse of family/household member for which he was sentenced principally to two days' confinement and two years' probation.

Third, BRUN was charged with state offenses relating to his assault of the KPD lieutenant and resisting of the order to stop on October 29, 2019, and was released pending trial. BRUN's alleged efforts to tamper with evidence on the very day he was released from state custody, and while on pretrial release, strongly weighs in favor of detention.

Fourth and finally, the Indictment alleges that BRUN continued participating in his drug trafficking organization for the next several months after his pretrial release in the state. This also weighs heavily in favor of detention. *See* 18 U.S.C. § 3142(g)(3)(B) (requiring consideration of "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial"); *see also United States v. Acevado-Ramos*, 755 F.2d 203, 207 (1st Cir. 1985) (noting that the concept of "dangerousness" under the Bail Reform Act includes the concern that a defendant may commit a crime while released on bail); *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989) (holding that a district court could approve of a detention order based on a risk of dangerousness to the community from the likelihood that the defendant would continue drug dealing if he were released pending trial).

//

//

//

### 4. The Nature and Seriousness of the Danger that BRUN Poses Weighs in Favor of Detention

BRUN poses a number of dangers to the community.  Most obviously, as discussed above, there is a serious danger that he would continue to distribute drugs while on pretrial release, just as he is alleged to have continued dealing drugs after his pretrial release on state charges in October 2019.  The assault charge against him also points to a different type of danger that he poses:  that BRUN is willing to endanger law enforcement and members of his own community if it helps him to avoid justice for his crimes.  The evidence tampering and witness tampering charges indicate that BRUN is willing to take corrupt steps to undermine the judicial process.  His alleged criminal relationship with a leader of the USO gang signals that he has the criminal connections and means to threaten and retaliate against witnesses.  And the fact that BRUN conspired to provide a firearm and ammunition for his "gun man," and that two other members of his drug trafficking organization have been charged with possessing a firearm and/or ammunition, further underscores that danger.

What is more, BRUN has recently demonstrated that he poses a danger in yet another way:  on February 7, 2020, while he was on state pretrial release, BRUN reportedly crossed the center line while driving on the Kapaa Bypass Road on Kauai and hit a pickup truck, injuring a six-year-old boy and a man.  The

injuries to the man and child appear not to be life-threatening. But the incident underscores the danger that BRUN continues to present.

## IV. Conclusion

For the foregoing reasons, the United States of America respectfully requests that the Court grant its motion to detain defendant ARTHUR BRUN, aka "Ata," pending trial.

DATED: February 28, 2020, Honolulu, Hawaii.

Respectfully Submitted,

KENJI M. PRICE
United States Attorney
District of Hawaii

By   */s/ Sean Van Demark*
    SEAN VAN DEMARK
    MICAH SMITH
    Assistant U.S. Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA